IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEMENCE MEDICAL
PRODUCTS, INC.,

    Plaintiff,

    v.

MEDLINE INDUSTRIES, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:13-CV-500-TWT

OPINION AND ORDER

      The Plaintiff, a manufacturer of medical adhesives, entered into a long-term contract to sell the adhesives to the Defendant, a distributor of medical supplies. After the contract went into effect, the Patient Protection and Affordable Care Act imposed a 2.3 percent tax on all medical devices. The Plaintiff initially passed this cost on to the Defendant. The Defendant, however, refused to pay the cost and notified the Plaintiff that the price increase was prohibited by the parties' agreement. The Plaintiff filed suit seeking a declaration that the medical device tax should be assessed against the Defendant distributor. The Defendant has moved for a judgment on the pleadings with respect to the declaratory relief, arguing that the Plaintiff is responsible for the tax pursuant to the Act and pursuant to the agreement between the parties. Because

a fair interpretation of the Act indicates that the tax falls on manufacturers, the Defendant's motion for partial judgment on the pleadings should be granted.

## I. Background

This dispute is between Chemence Medical Products, Inc. ("Chemence"), a producer of specialized medical adhesives, and Medline Industries, Inc. ("Medline"), a distributor of medical devices and products. The parties' broad dispute concerns a supply agreement entered into on August 1, 2010, under which Chemence supplies Medline with all of Medline's adhesive requirements (the "Supply Agreement"), and the parties' conduct after the agreement went into effect. Within the broad dispute, the parties have a narrower dispute, relevant to this motion, concerning whether the medical device tax (the "Device Tax") imposed as part of the Patient Protection and Affordable Care Act ("ACA") must be imposed on the Plaintiff as manufacturer and whether the tax may be reflected as a price increase pursuant to the Supply Agreement.

The ACA "imposed on the sale of any taxable medical device by the manufacturer, producer, or importer a tax equal to 2.3 percent of the price for which so sold." 26 U.S.C. § 4191(a). "Under section 4191(a), tax is imposed on the sale of any taxable medical device by the manufacturer, producer, or importer of the device." 26 C.F.R. § 48.4191-1(a). And "[t]he manufacturer, producer, or importer making the

sale of a taxable medical device is liable for the tax imposed by section 4191(a)." 26 C.F.R. § 48.4191-1(c). The Defendant contends the Plaintiff is a manufacturer under the ACA and is therefore liable for the Device Tax, and that the Plaintiff's imposition of the tax on the Defendant was a violation of the Supply Agreement.

The Supply Agreement itself provides a Transfer Price for the adhesives. "Transfer Price" is defined as "the price per Unit that Medline will pay Chemence for Products and Media as set forth in Section 5" of the Supply Agreement. (Def.'s Mot. for Partial Judgment on the Pleadings, Ex. 1, the "Supply Agreement," § 1(O)). There is no other definition for a price term. Section 5.2 provides that "Product shall be sold by Chemence to Medline at the Transfer Price of: $5.50 through December 31, 2012." (Id. at § 5.2). Chemence has the right to raise the Transfer Price if Medline failed to purchase its minimum annual commitment, as set forth in Section 5.5. (Id. §§ 5.2, 5.5). The Supply Agreement also provided a mechanism for increasing the Transfer Price every January 1st:

> Transfer Price can change annually to reflect changes in raw material, labor costs or manufacturing, provided Chemence gives Medline at least thirty (30) days prior written notice, pursuant to the following formula:
>
>> Before the end of the first year of this Agreement, Chemence will calculate and provide Medline with a current Unit Cost ("UC") that includes Direct Material Cost ("DMC"), Direct Labor ("DL") and Overhead ("OH"). A new UC will be calculated by Chemence considering changes in the DMC, DL, and OH on an annual basis

>     commencing January 1, 2013, and each subsequent January
>     1st to determine the Percentage Variance ("PV") in Unit
>     Cost as a positive or negative. The new Transfer Price is
>     determined by multiplying the current Transfer Price by the
>     PV.

(Id. at § 5.6). Section 5.6 further provided Medline the right to review the changes in price and terminate the agreement within 30 days of a Transfer Price increase. (Id.) Finally, Section 5.8 provided that:

>     Chemence agrees that Transfer Prices charged to Medline for the
>     Products shall be no less than 15% less than the lowest net price charged
>     for Products sold to other distributors permitted in this Agreement.
>     Charges to Medline pursuant to sections 5.5 and 5.6 herein above shall
>     not be considered in determining such best price.

(Id. at § 5.8). Chemence argues that these provisions allow it to pass the cost of the Device Tax onto Medline.

In March 2010, Congress passed the ACA. The Supply Agreement went into effect on August 1, 2010. In late 2012, the Plaintiff informed Medline that it intended to charge Medline the amount of the Device Tax. And beginning on January 1, 2013, the Plaintiff began charging Medline the tax as a line item for 2.3% of the cost of each item purchased by Medline. (Am. Compl. ¶¶ 52, 55). Medline objected to the increased charges and sent a letter to Chemence stating that Medline considered the increase in price a "breach of Section 5.6 of the Supply Agreement … which only allows the price to increase 'to reflect changes in raw materials, labor costs or

manufacturing.'"  (Am. Counterclaim ¶ 23; Ex. 4).  The Plaintiff's counsel responded that Chemence did not consider the newly imposed tax a price increase.  (Id. at ¶ 27; Ex. 5).  Chemence states it has stopped charging Medline for the Device Tax and has been paying the amount to the IRS itself.  (Am. Compl. ¶ 59).

Chemence filed suit on February 15, 2013, and amended its complaint on February 28, 2013.  Count II of the amended complaint seeks a declaratory judgment with respect to the assessment of the Device Tax.  Specifically, Chemence seeks two declarations: (1) "whether the [Device Tax] is a price increase according to the terms of the Agreement or a mandatory and separate charge to Medline pursuant to law"; and (2) if the Court determines the Device Tax is a price increase, "whether Medline has the right to conduct an inspection of Chemence's relevant books and records in order to confirm the requested price increase and/or reject any such price increase and terminate the Agreement on 30 days written notice, with no further liability pursuant to Section 5.6."  (Am. Compl. ¶¶ 48-63).

The Defendant filed this motion seeking a partial judgment on the pleadings. The Defendant seeks judgment on the Plaintiff's request for declaratory relief. Specifically, the Defendant seeks a determination that "(1) Plaintiff, the manufacturer of the subject medical device, is not required by law to pass along to Medline, a distributor of the subject device, the amount of the excise tax imposed on

manufacturers of medical devices as a mandatory and separate charge; and (2) the [device] tax is a price increase that is <u>not</u> permitted by the terms of the Parties' agreement." (Def.'s Mot. for Partial Judgment on the Pleadings, at 2).

## II. Motion for Judgment on the Pleadings Standard

A motion for judgment on the pleadings is subject to the same standard as is a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. See <u>Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.</u>, 711 F.2d 989, 994-95 (11th Cir. 1983); <u>see also</u> <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint.

See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

### III. Discussion

#### A. Assessment of the Device Tax

The Defendant argues that the Plaintiff is not entitled to declaratory relief because the Device Tax is levied on the Plaintiff as a manufacturer. According to the Defendant, the plain language of the ACA assesses the tax on the manufacturer. And the IRS' interpretation, as evidence by 26 C.F.R. § 48.4191-1(c), confirms that the manufacturer bears the burden. Although the Defendant concedes that the manufacturer could pass on the cost of the tax, the Defendant argues that the legal burden of the tax nevertheless falls on the manufacturer.

The Plaintiff contends that the tax should be assessed on the distributor. First, the Plaintiff argues that the Device Tax must be borne by distributors such as Medline because 26 U.S.C. § 4219 requires purchasers to pay the Device Tax whenever manufacturers are untaxable. Likewise, the Plaintiff argues that 26 U.S.C. § 4216(b)(1) requires the constructive price for tax purposes to be calculated by the

highest wholesale price rather than the retail price, indicating that distributors such as Medline should bear the legal incidence of the Device Tax.

The Court concludes that, based on the plain terms of the statute and its regulations, the Device Tax is to be borne by manufacturers when, as here, the manufacturers are taxable. The test for determining where the legal incidence of a tax falls "is nothing more than a fair interpretation of the taxing statute as written and applied, without any requirement that pass-through provisions or collection requirements be 'explicitly stated.'" California State Bd. of Equalization v. Chemehuevi Indian Tribe, 474 U.S. 9, 11 (1985) (citing Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 481-83 (1976)).

Here, the ACA "imposed on the sale of any taxable medical device by the manufacturer, producer, or importer a tax equal to 2.3 percent of the price for which so sold." 26 U.S.C. § 4191(a). The language of the statute itself imposes a tax on the "manufacturer, producer, or importer," not on a distributor, like Medline, or a retailer or a consumer. Similarly, the regulations state that, "[u]nder section 4191(a), tax is imposed on the sale of any taxable medical device by the manufacturer, producer, or importer of the device." 26 C.F.R. § 48.4191-1(a). And "[t]he manufacturer, producer, or importer making the sale of a taxable medical device is liable for the tax

imposed by section 4191(a)." 26 C.F.R. § 48.4191-1(c). The statute itself and its regulations plainly place the burden of the Device Tax on the manufacturer.[1]

The Plaintiff argues, however, that because 26 U.S.C. § 4219 requires purchasers to pay the tax whenever the manufacturer is untaxable, the legal incidence of the tax falls on purchasers. 26 U.S.C. § 4219 states:

> In case any person acquires from the manufacturer, producer, or importer of an article, by operation of law or as a result of any transaction not taxable under this chapter, the right to sell such article, the sale of such article by such person shall be taxable under this chapter as if made by the manufacturer, producer, or importer, and such person shall be liable for the tax.

26 U.S.C. § 4219. Contrary to the Plaintiff's argument, this section reinforces the Court's conclusion that the Device Tax shall be first borne by the manufacturer. Notably, the title of the section is "Application of tax *in case of sales by other than manufacturer* or importer." 26 U.S.C. § 4219 (emphasis supplied). The title indicates that it is unusual for the tax to fall on an entity that is not a manufacturer or an importer.

The Plaintiff suggests that, in California State Bd. of Equalization v. Chemehuevi Indian Tribe, the Supreme Court held that a pass-through provision such as the one in 26 U.S.C. § 4219 demonstrates that the ultimate burden of a tax falls on the entity that eventually bears the tax. However, the Supreme Court in Chemehuevi

---

[1] Chemence does not argue that it is an untaxable manufacturer.

did not hold that a pass-through provision in a tax statute which required purchasers to pay a tax whenever a vendor was untaxable indicated that the ultimate burden of the tax was on the purchaser. Rather, the Court only stated that if the vendor is untaxable, "the legal incidence of the tax [falls] on purchasers *in such cases*." Chemehuevi, 474 U.S. at 11 (emphasis supplied). Here, 26 U.S.C. § 4219 is a pass-through provision that places the legal incidence of the Device Tax on a person who is not the manufacturer, producer, or importer when the manufacturer, producer, or importer is untaxable. But, as in Chemehuevi, this only indicates that the legal incidence of the tax does not fall on the manufacturer, producer, or importer *in those cases*, not in all cases. In general, the fact that the manufacturer can pass along the cost of the tax does not mean that the tax does not fall on the manufacturer. See Wagnon v. Prairie Band Potawatomi Nation, 546 U.S. 95, 103 (2005) ("While the distributors are 'entitled' to pass along the cost of the tax to downstream purchasers, … they are not required to do so. In sum, the legal incidence of [the tax] is on the distributor."). Because there is no indication that in this case the Plaintiff as manufacturer of the devices is untaxable, the Device Tax must be borne by the Plaintiff as manufacturer.

Next, the Plaintiff argues that the mechanism for calculating the price to be taxed indicates that the Device Tax should be borne by distributors. Under 26 U.S.C.

§ 4216(b)(1)(C), the amount to be charged is calculated as a percentage of the lower of "(i) the price for which such article is sold, or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary."  This provision does not indicate that distributors should bear the Device Tax.  First, the provision is entitled "Application of tax in case of sales by other than manufacturer or importer," again indicating that the tax is intended to be imposed on manufacturers.  Further, the portion of the provision that the Plaintiff relies upon is based on articles sold at retail. The full quotation states:

> *In the case of an article sold at retail*, the computation under the preceding sentence shall be on whichever of the following prices is the lower: (i) the price for which such article is sold, or (ii) the highest price for which such articles are sold to wholesale distributors, in the ordinary course of trade, by manufacturers or producers thereof, as determined by the Secretary.

26 U.S.C. § 4216(b)(1)(C) (emphasis supplied).   Here, the Plaintiff is a manufacturer selling to the Defendant, a distributor.  There is no retail sale involved and therefore 26 U.S.C. § 4216(b)(1)(C) should not apply.  Additionally, nothing in the statute indicates that because there might be some situations where the Device Tax needs to be calculated based on retail sales, the incidence of the tax does not fall on the manufacturer.  Accordingly, based on a fair interpretation of the statute as written, the Court concludes that the Device Tax falls on the Plaintiff, and the Plaintiff is therefore

not entitled to declaratory relief in this respect. The Defendant's motion for partial judgment on the pleadings should be granted on these grounds.

>   B.  Whether Charging the Device Tax to Medline was Permitted Under the Supply Agreement

The Defendant also seeks a judgment on the pleadings with respect to the Plaintiff's second request for declaratory relief. That request asks the Court to determine whether, assuming that the Device Tax must be borne by the Plaintiff, "Medline has the right to conduct an inspection of Chemence's relevant books and records in order to confirm the requested price increase and/or reject any such price increase and terminate the Agreement on 30 days written notice," pursuant to Section 5.6 of the Supply Agreement. (Am. Compl. ¶ 58). The Defendant argues that the Device Tax is an increase in price not permitted by the terms of the agreement. The Court agrees that the increase in price was not supported by the Supply Agreement, and that the Plaintiff is not entitled to declaratory relief.

To determine whether the Supply Agreement permitted Chemence to pass on the cost of the Device Tax to Medline, the Court must construe the Supply Agreement. "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." O.C.G.A. § 13-2-3. "If contract language is clear and

unambiguous, [the Court should] look only to that language to ascertain the parties' intention." Georgia-Pacific Corp. v. Lieberam, 959 F.2d 901, 905 (11th Cir. 1992) (citing Hunsinger v. Lockheed Corp., 192 Ga. App. 781, 783 (1989)). "And if the contract language is 'plain, unambiguous and capable of only one reasonable interpretation,' construction of the contract is neither required nor permitted." Id. (citing Hunsinger, 192 Ga. App. at 783). "If, however, the contract 'contains provisions susceptible of more than one reasonable interpretation, it is uncertain of meaning or expression and, thus, ambiguous.'" Id. (quoting United States Fidelity & Guaranty Co. v. Gillis, 164 Ga. App. 278, 281 (1982)). Here, the Court concludes the Supply Agreement is not ambiguous with respect to the Transfer Price.

As noted, the Supply Agreement sets forth a Transfer Price. "Transfer Price" is defined as "the price per Unit that Medline will pay Chemence for Products and Media as set forth in Section 5" of the Supply Agreement. (Supply Agreement, § 1(O)). There is no other definition for a price term. Section 5.2 provides that "Product shall be sold by Chemence to Medline at the Transfer Price of: $5.50 through December 31, 2012." (Id. at § 5.2). Chemence can raise the Transfer Price if Medline fails to purchase its minimum annual commitment, pursuant to Section 5.5. (Id. §§ 5.2, 5.5). The Supply Agreement also provided a mechanism for increasing the Transfer Price every January 1st:

> Transfer Price can change annually to reflect changes in raw material, labor costs or manufacturing, provided Chemence gives Medline at least thirty (30) days prior written notice, pursuant to the following formula:
>
>> Before the end of the first year of this Agreement, Chemence will calculate and provide Medline with a current Unit Cost ("UC") that includes Direct Material Cost ("DMC"), Direct Labor ("DL") and Overhead ("OH").  A new UC will be calculated by Chemence considering changes in the DMC, DL, and OH on an annual basis commencing January 1, 2013, and each subsequent January 1st to determine the Percentage Variance ("PV") in Unit Cost as a positive or negative.  The new Transfer Price is determined by multiplying the current Transfer Price by the PV.

(Id. at § 5.6).  Section 5.6 thus provides a mechanism by which the Transfer Price can increase from its original $5.50.  That mechanism, however, by its terms only allows for price increases based on cost changes for labor, manufacturing, or raw material.  Specifically, a new Unit Cost is calculated annually based on percentage changes in Direct Material Cost, Direct Labor cost, and the cost for Overhead.  These categories do not allow for an increase in price due to the Device Tax because an excise tax is not direct material cost, direct labor cost, or overhead. By their plain terms, therefore, Sections 5.2, 5.5, and 5.6 of the Supply Agreement do not allow Chemence to pass the Device Tax on to Medline as an increase in Transfer Price.

Chemence, however, argues that the increase in Transfer Price here is not governed by Sections 5.2, 5.5, and 5.6 of the Supply Agreement.  Rather, the increased price is permitted under Section 5.8, which reads:

> Chemence agrees that Transfer Prices charged to Medline for the Products shall be no less than 15% less than the lowest net price charged for Products sold to other distributors permitted in this Agreement. Charges to Medline pursuant to sections 5.5 and 5.6 herein above shall not be considered in determining such best price.

(Id. at § 5.8). Chemence argues that, "[r]ead in conjunction with § 5.6 and beyond December 31, 2012, § 5.8 permits Chemence to charge Medline any Transfer Price so long as such Transfer Price is at least 15% less than the lowest net price charged to other distributors." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Partial Judgment on the Pleadings, at 6). If Section 5.6 were the only means for adjusting the Transfer Price, then Chemence would not be able to maintain the "no less than 15% less than the lowest net price charged to other distributors," and Section 5.8 would be rendered meaningless. "Thus, under § 5.6, Chemence could not decrease the Transfer Price to maintain 15% price difference because a business decision [to reduce the price to a different distributor] is not a change in raw material, labor costs, or manufacturing." (Id. at 7). Chemence argues that Section 5.8 provides the real limitation on changes in Transfer Price and that Section 5.6 is merely an exception to the limits of Section 5.8, and further that Medline has never been charged a Transfer Price in violation of Section 5.8.

The Court disagrees with Chemence's reading of the Supply Agreement. A plain reading of all of Section 5, which is entitled Price Terms of Payment, shows that

Sections 5.5 and 5.6 provide the sole means for raising the Transfer Price. As noted, Section 5.2 provided the initial Transfer Price and Section 5.6 provides a mechanism by which "Transfer Price can change annually." (Supply Agreement, § 5.6). Only Sections 5.5 and 5.6 address an increase in the Transfer Price. Section 5.5 states that "[i]n the event Medline fails to meet its Annual Purchase Minimums as stated in section 6 for any given year, then the Transfer Price may be increased by Chemence for all products purchased in the year of such deficiency" pursuant to a listed formula. (Id. § 5.5). Section 5.6 provides that Medline can inspect Chemence's books in order to confirm a price increase and that Medline has the right to reject any price increase and terminate the agreement. When reading all of Section 5 together, Section 5.8 appears only to ensure that Medline gets the best price from Chemence for the adhesives in comparison to other distributors identified elsewhere in the Supply Agreement. Section 5.8 likewise ensures that this discount is "no less than 15% less than the lowest net price charged." (Id. § 5.8). In essence, Section 5.8 provides a maximum price that Chemence can charge Medline, restricting Chemence's ability to raise the Transfer Price. For example, Chemence is free to charge Medline 20% less than it charges the other distributors, but Chemence is not free to charge Medline 10% less than it charges its other distributors. So, if Chemence makes a business decision to reduce the price it charges to a distributor other than Medline, Section 5.8 would

require Chemence to also reduce the price charged to Medline in order to ensure that Medline's price is at least 15% less than the price charged to the other distributor. If, on the other hand, Chemence were to charge all of its distributor customers an increased price, say because of an excise tax on its products, without changing the price charged to Medline, then Medline's discount would exceed 15%, which is permitted by Section 5.8. However, in this situation, Section 5.8 does not *compel* Chemence to increase the price charged to Medline in order to maintain the 15% discount. Nothing in Section 5.8 provides that Chemence can raise the Transfer Price on Medline so that Chemence is closer to the maximum price it could conceivably charge under that section. The plain terms of Section 5.8 indicate that Chemence is agreeing to a maximum price it will charge Medline rather than securing a minimum price to impose on Medline. Further, when the Transfer Price is raised in accordance with costs pursuant to Section 5.6, Medline has the right to inspect Chemence's books and reject the price increase. It would be unreasonable for the Supply Agreement to grant Medline the right to reject an increase in Transfer Price under one provision when a different provision gives Chemence an unfettered right to raise the Transfer Price. The more reasonable reading of Section 5 as a whole is that Sections 5.5 and 5.6 alone represent the mechanisms by which the Transfer Price can be raised, and that Section 5.8 only serves to prevent Chemence from charging Medline a price too close

to the price it charges other distributors. Because Sections 5.5 and 5.6 explicitly address Transfer Price increases, and because nothing in Section 5.8 explicitly empowers Chemence to increase the Transfer Price, the Court concludes that Section 5.8 does not override the Transfer Price increase provisions separately addressed in Section 5. Accordingly, Chemence cannot impose the Device Tax on Medline as a rise in the Transfer Price under the Supply Agreement. Chemence is therefore not entitled to the declaratory relief it seeks in Count II of its amended complaint. The Defendant's motion for partial judgment on the pleadings should therefore be granted.

## IV.  Conclusion

For the reasons set forth above, the Defendant's Motion for Partial Judgment on the Pleadings [Doc. 49] is GRANTED. The Plaintiff is not entitled to declaratory relief it seeks under Count II of its amended complaint.


SO ORDERED, this 4 day of December. 2013.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge