IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHEMENCE MEDICAL
PRODUCTS, INC.,

    Plaintiff,

        v.                                        CIVIL ACTION FILE
                                                  NO. 1:13-CV-500-TWT

MEDLINE INDUSTRIES, INC.,

    Defendant.

## OPINION AND ORDER

This is a breach of contract action.  It is before the Court on the Defendant's

Motion to Compel [Doc. 103], the Defendant's Motion for Extension of Time to Move

for Summary Judgment on the Grounds That Plaintiff has Suffered no Actual

Damages [Doc. 131], the Defendant's Motion for Summary Judgment [Doc. 134], the

Plaintiff's Motion for Partial Summary Judgment [Doc. 150 and Doc. 167], the

Defendant's Motion for Leave to File Declarations Authenticating Expert Reports

[Doc. 196], the Defendant's Motion for Leave to File a Sur-Reply in Opposition to

Plaintiff's Motion for Partial Summary Judgment [Doc. 197], and the Defendant's

Motion to Exclude Opinions and Testimony of Dr. Seamas Grant [Doc. 210 and Doc.

230]. For the reasons stated below, the Defendant's Motion to Compel, the

T:\ORDERS\13\Chemence Medical Products\msjtwt.wpd

Defendant's Motion for Extension of Time, the Defendant's Motion for Leave to File Declarations, and the Defendant's Motion to Exclude Opinions and Testimony of Dr. Grant are DENIED as moot. The Defendant's Motion for Summary Judgment is GRANTED. The Plaintiff's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part. The Defendant's Motion for Leave to File a Sur-Reply is DENIED.

## I. Background

The Plaintiff, Chemence Medical Products, Inc., manufactures medical adhesives.[1] The Defendant, Medline Industries, Inc., distributes medical products.[2] On August 1, 2010, Medline and Chemence entered into a Supply Agreement ("the Agreement"), under which Chemence would supply a surgical closure adhesive to Medline.[3] The Agreement provided that Chemence would supply "a 2-octyl cyanoacrylate surgical closure adhesive with the exact specifications, or substantially similar specifications" as those set forth in the Agreement.[4] Chemence sold that product to Medline under the trade name Octylseal, but also manufactured the same

---

[1]     Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ¶ 1.

[2]     Id.

[3]     Id. ¶ 2.

[4]     Id.

product under two other names – Derma+Flex QS and Sure+Close II – consistent with the Agreement.[5]

The Agreement's terms required Medline to pay Chemence $400,000 upon FDA approval of the product and an additional $227,000 upon execution of the Agreement.[6] Under the Agreement, Medline was required to purchase a minimum annual amount of the product and, as long as Medline met that requirement, Chemence was required to supply the product for a fixed transfer price of $5.50 through December 31, 2012.[7] After December 31, 2012, Chemence could increase the transfer price annually to reflect changes in raw material, labor costs, and manufacturing, provided it gave Medline thirty days' notice.[8] The Agreement then gave Medline the right to reject price increases and terminate the contract upon thirty days' notice, with no further liability.[9]

---

[5]    Id. ¶¶ 5, 7, 9, 10.

[6]    Id. ¶ 14.

[7]    Id. ¶¶ 15-16.

[8]    Id. ¶ 17.

[9]    Id. ¶ 18.

On November 28, 2012, Chemence notified Medline that sales of Octylseal could be subject to a 2.3% federal excise tax on medical devices.[10] Medline expressed concern about Chemence passing this cost to Medline.[11] On December 20, 2012, Chemence informed Medline that it would add 13 cents per unit to the cost of Octylseal as a charge for the excise tax.[12] Medline responded on the same day, stating that it did not believe the Agreement allowed the charge.[13] Chemence replied that it would review the Agreement, but that Medline was "given notice on November 28th that the tax (as a price increase) would take effect on January 1st."[14] Medline further responded that nothing in Section 5.6 of the Agreement (the section governing price increases) allowed for an increase based on taxes.[15] Chemence then stated on December 28, 2012, that "[e]ven though the Federally Mandated Tax is not a price increase per se, its absorption . . . would amount to a price decrease which can be reasonably argued as being the same thing and having the same effect."[16] Additionally,

---

[10]      Id. ¶ 46.

[11]      Id. ¶ 47.

[12]      Id. ¶ 48.

[13]      Id. ¶ 49.

[14]      Id. ¶ 50.

[15]      Id. ¶ 51.

[16]      Id. ¶ 52.

Chemence informed Medline that the increase was proper because notice had been given on November 28.[17] Medline subsequently rejected the increase in cost.[18] Chemence then told Medline that if it did not pay the tax, the amount would become overdue and Chemence would eventually stop shipping the product.[19] On January 30, 2013, Medline requested to inspect Chemence's books and records, as allowed under the Agreement, and reserved its right to terminate the contract if Chemence did not rescind imposition of the tax.[20]

Chemence then filed its initial complaint in this matter on February 15, 2013, seeking a declaratory judgment as to whether the tax was a federally mandated payment or a permissible price increase.[21] On February 19, 2013, Medline notified Chemence that it would terminate the Agreement in thirty days, pursuant to Section 5.6 of the Agreement, the section governing price increases.[22] Chemence responded, stating that it did not believe Medline had a right to terminate the Agreement and that

---

[17]  Id.

[18]  Id. ¶¶ 53, 54.

[19]  Id. ¶ 55.

[20]  Id. ¶ 58.

[21]  Id. ¶¶ 59-61.

[22]  Id. ¶ 65.

it would honor Medline's orders through March 20, 2013.[23] Then, on March 7, 2013, Medline sent a letter stating that it rescinded its termination of the Agreement and forwarded a purchase order for the month of May.[24] On March 8, 2013, Chemence wrote to Medline that it would not accept the May purchase order because the Agreement was due to terminate on March 21, 2013.[25] On March 19, 2013, Medline informed its sales representatives, through an internet portal and through email, that Octylseal would no longer be available from Chemence.[26] On March 26, 2013, Chemence issued a press release, stating that it would discontinue manufacturing Octylseal and replace it with an identical product – derma+flex QS.[27] Chemence then finished shipping Octylseal for Medline's April purchase order on May 29, 2013.[28] Following fulfillment of the April order, Chemence had 953 extra cases of Octylseal

---

[23]   Pl.'s Resp. to Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ¶ 66.

[24]   Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ¶¶ 67-68.

[25]   Id. ¶ 70.

[26]   Pl.'s Statement of Facts in Supp. of its Mot. for Partial Summ. J. ¶¶ 170-71.

[27]   Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ¶ 72.

[28]   Id. ¶ 73.

remaining, which it then sold to Medline.[29] After those 953 cases, Chemence no longer made Octylseal available to Medline.[30]

This Court has already found that the excise tax did not qualify either as a permissible price increase under the Agreement or a federally mandated payment. Remaining before this Court are Chemence's claim for breach of contract and Medline's counterclaims for breach of contract. Both parties move for summary judgment on Chemence's claim, and Chemence moves for summary judgment on Medline's counterclaims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[31] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[32] The party seeking summary judgment must first identify grounds to

---

[29]   Id. ¶¶ 75-76.

[30]   Id. ¶ 77.

[31]   FED. R. CIV. P. 56(a).

[32]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

show the absence of a genuine issue of material fact.[33] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[34] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[35]

### III. Discussion

### A. Cross Motions for Summary Judgment on Chemence's Claim

Medline moves for summary judgment on Chemence's claims for breach of contract, arguing that it could not have breached the contract because it simply exercised its right to terminate, as allowed under the Agreement. Additionally, Medline argues that it did not breach the Agreement by selling other surgical glues. Chemence also moves for summary judgment on its breach of contract claims, agreeing with Medline that the facts are not in dispute. To determine whether Medline breached the contract, the Court must construe the Agreement. If a contract is unambiguous, courts enforce it as written.[36] When a court finds an ambiguity,

---

[33]     Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[34]     Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[35]     Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[36]     Thomas v. B &I Lending, LLC, 261 Ga. App. 39, 41 (2003).

however, it must attempt to resolve that ambiguity using the rules of construction.[37]

The contract is considered as a whole and should be interpreted so that its parts all

harmonize.[38] Courts should give reasonable, lawful, and effective meaning to the

provisions of the contract, avoiding unreasonable interpretations.[39]

This Court finds that Medline did not breach the Agreement by giving a notice

of termination following Chemence's attempt to impose the excise tax. Where a party

simply exercises its rights under a contract, there is no breach of that contract.[40] The

plain language of the contract allows Medline to terminate the Agreement following

the imposition of a price increase. Here, it is undisputed that the tax would increase

the amount paid by Medline to Chemence. Additionally, Chemence gave thirty days'

notice before imposing the tax, as required by Section 5.6 of the Agreement – the

section governing price increases.[41] Chemence also stated that the tax would have the

same effect as a price increase.[42] Chemence cannot have it both ways. It treated the

---

[37]   Id. at 41-42.

[38]   Id. at 42.

[39]   Id.

[40]   Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 374 (2004).

[41]   Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ¶ 52.

[42]   Id.

imposition of the tax like a price increase, and Medline responded by exercising its rights under the Agreement in the case of a price increase. Chemence cannot now argue that Medline breached the Agreement when Medline simply responded to Chemence's actions as allowed under that contract. Furthermore, if this Court were to hold that Medline breached the contract by terminating following an impermissible price increase, it would create the absurd result whereby Medline could terminate the contract if Chemence raised the price legitimately, but not if it raised the price illegitimately. This Court therefore finds that Medline did not breach the contract by exercising its right to terminate following notice of a price increase.

Additionally, Medline did not breach the Agreement by selling Dermabond and Surgiseal. Chemence is correct that the Agreement defines "Product" as "a 2-octyl cyanoacrylate surgical closure adhesive with the exact specifications, or substantially similar specifications, as those attached hereto on Exhibit A, under any or no trade name or brand."[43] Although Chemence argues that this definition includes similar surgical glue products such as Dermabond and Surgiseal, the use of the term "Product" at other places in the Agreement indicates otherwise. For example, Section 5.1 of the Agreement requires Medline to pay Chemence a fixed sum "[u]pon FDA

---

[43]     Pl.'s Mot. for Partial Summ. J., Ex. 1.

510(k) Regulatory Approval of the Product."[44] If Chemence's argument were correct, Medline would have been required to pay Chemence upon FDA approval of Dermabond and Surgiseal, products that are not even manufactured by Chemence. Of course this cannot be the case. Taking the definition provision in isolation, Chemence's position might have merit, but reading the contract as a whole, "Product" includes only Octylseal in the formulation described in the Agreement or a substantially similar formulation. Medline therefore did not breach the contract by selling Dermabond and Surgiseal. Medline's motion for summary judgment should be granted, and Chemence's motion for summary judgment on its breach of contract claim should be denied. Medline objects to the Battisti Declaration filed by Chemence in response to Medline's motion for summary judgment. The Court finds that paragraph 11 of that Declaration contains a legal conclusion. The objection to that paragraph is therefore sustained. The remaining objections are overruled.

Because this Court grants summary judgment to Medline on Chemence's claims for breach of contract, Medline's motion to compel on the issue of damages is now moot. Medline's motion for extension of time to move for summary judgment on the issue of damages is also moot. Additionally, because this Court finds no need to reference Medline's expert reports to determine that "substantially similar" does not

---

[44]     Id., Ex. 1, § 5.1(a)(i).

include products such as Dermabond and Surgiseal, Medline's motion for leave to file declarations authenticating expert reports is now moot as well. For the same reasons, Medline's objections to the Lynch Declaration and Rach Declaration, as well as its motion to exclude Dr. Grant's testimony are moot.

**B. Chemence's Motion for Partial Summary Judgment**

Chemence also moves for summary judgment on two of Medline's counterclaims. First, Chemence moves for summary judgment on Medline's counterclaim for breach of Section 15.2 of the Agreement. Section 15.2 provides that the parties will not issue any oral or written publicity regarding the performance or amendment of the Agreement unless there is prior agreement.[45] Chemence argues either that any alleged breach took place after the termination of the Agreement, or that Medline waived any claim for breach by making its own public statement. Chemence is entitled to summary judgment on this claim for two reasons. First, Medline agrees that Section 15.2 did not survive termination of the Agreement.[46] Medline sent its Notice of Intent to Terminate the Agreement on February 19, 2013, stating that the Agreement would terminate on March 21, 2013. Georgia law allows the repudiating party to retract its repudiation unless the other party has "canceled or

---

[45]     Pl.'s Mot. for Partial Summ. J., Ex. 1, § 15.2.

[46]     Def.'s Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 47.

materially changed his position or otherwise indicated that he considers the repudiation final."[47] Although Medline attempted to rescind its termination on March 7, by that point, Chemence had already treated the contract as terminated. By that point, Chemence had already filed its amended complaint for breach of contract in this matter, indicating both a material change in position and that it treated the repudiation as final. By the time Chemence made its public statement on March 26, 2013, therefore, the Agreement was no longer in effect and Section 15.2 did not apply. Furthermore, Medline made statements to its sales representatives on March 19 regarding the termination of the Agreement. Those statements were intended to inform customers why Medline would no longer be selling Octylseal. Regardless of when the Agreement terminated, therefore, Medline waived any claim under Section 15.2 by making its own statement. Chemence's motion for summary judgment on that claim should be granted.

Second, Chemence moves for summary judgment on Medline's counterclaim for Chemence's failure to timely ship product. Chemence argues that the claim has been waived pursuant to the clause in the contract that bars the recovery of consequential damages in most circumstances. That clause, Section 11.2 of the Agreement, states that neither party shall "be liable to the other for consequential

---

[47]      O.C.G.A. § 11-2-611(1).

damages even if either party has been advised of the possibility of such damages"

except in the case of breach of the exclusivity provisions or third party indemnity

claims.[48] The alleged breach here, failure to deliver shipments on time, is not related

to exclusivity, so there is no dispute that the clause applies. Medline does not dispute

that it cannot recover consequential damages for this alleged breach.[49] The parties

dispute, however, whether Medline suffered any direct damages as a result of the

breach. Summary judgment on Medline's counterclaim for breach of contract resulting

from late shipments should therefore be denied.

### C. Medline's Motion for Leave to File a Surreply

Medline moves for leave to file a surreply in opposition to Chemence's motion

for partial summary judgment on the ground that Chemence raised new arguments in

its reply in support of its motion for summary judgment. Generally, surreplies are not

authorized and may only be filed under unusual circumstances, such as when a party

raises new arguments in a reply brief.[50] If, however, the new arguments simply

respond to arguments raised in a response brief, no surreply is warranted.[51] Here, both

---

[48]     Pl.'s Mot. for Partial Summ. J., Ex. 1, § 11.2.

[49]     Def.'s Resp. in Opp'n to Pl.'s Mot. for Partial Summ. J., at 48.

[50]     Roelle v. Cobb Cnty. Sch. Dist., No. 1:13-cv-3045-WSD, 2014 WL
4457235, at *9 (N.D. Ga. Sept. 10, 2014).

[51]     Id.

arguments that Medline claims are new merely respond to arguments raised by Medline in its response brief. No surreply is warranted, and Medline's motion should be denied. Medline also objects to the Wilson Declaration on the ground that it raises the same new arguments. Because the Court finds that the arguments are not new, it overrules that objection.

## IV. Conclusion

For the reasons stated above, the Defendant's Motion to Compel [Doc. 103] is DENIED as moot, the Defendant's Motion for Extension of Time to Move for Summary Judgment on the Grounds That Plaintiff has Suffered no Actual Damages [Doc. 131] is DENIED as moot, the Defendant's Motion for Summary Judgment [Doc. 134] is GRANTED, the Plaintiff's Motion for Partial Summary Judgment [Doc. 150 and Doc. 167] is GRANTED in part and DENIED in part, the Defendant's Motion for Leave to File Declarations Authenticating Expert Reports [Doc. 196] is DENIED as moot, the Defendant's Motion for Leave to File a Sur-Reply in Opposition to Plaintiff's Motion for Partial Summary Judgment [Doc. 197] is DENIED, and the Defendant's Motion to Exclude Opinions and Testimony of Dr. Seamas Grant [Doc. 210 and Doc. 230] is DENIED as moot.

SO ORDERED, this 11 day of February, 2015.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge